UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CARMEN BLANCO,

CASE NO: 00-6006-CIV-ZLOCH

Plaintiff,

vs.

MICHAEL W. MOORE, Secretary of the
FLORIDA DEPARTMENT OF CORRECTIONS,
in his Official Capacity, and
FLORIDA DEPARTMENT OF CORRECTIONS

Defendants.

_____/

**NIGHT BOX
FILED

SEP - 4 2001

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL**

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, CARMEN BLANCO, by and through her undersigned attorneys, responds to the motion for summary judgment filed by Defendant, FLORIDA DEPARTMENT OF CORRECTIONS and states as follows:

### I. INTRODUCTION

This is an action for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et.seq. (Title VII). The action was filed by CARMEN BLANCO(" BLANCO") against her employers, FLORIDA DEPARTMENT OF CORRECTIONS ("DOC" or "Defendant"), in order to correct unlawful employment practices on the basis of national origin discrimination and retaliation and to provide appropriate relief to CARMEN BLANCO, who was adversely affected by Defendant's unlawful employment practices. Specifically, Defendant violated Section 703(a)(1) of Title VII by discriminating against her based on her national origin and failing to promote her. Moreover, Defendant repeatedly violated Section 704(a) of Title VII by retaliating against Ms. BLANCO for her complaints of unlawful discrimination.

CASE NO: 00-6006-CIV-ZLOCH

## II. FACTS

1. On March 12, 1992, Plaintiff, BLANCO, was hired by Defendant, FLORIDA DEPARTMENT OF CORRECTIONS as a Word Processor.

2. On or about June 29, 1998, BLANCO was constructively discharged as a direct result of the unlawful discrimination and retaliation she experienced from Defendant as she was forced to resign from her employment.

3. During Plaintiff's employ, BLANCO was subjected to a pattern of intentional discrimination and retaliation by her supervisors because of her national origin and her related numerous grievances filed with Defendant.

4. During the six years of Plaintiff's employment with Defendant, BLANCO was never promoted. (Blanco depo. p. 63-65). Rather, she was only transferred once without a pay increase. (Blanco depo. p. 45 and 46-47).

5. Although BLANCO applied for several promotions and requested training which was available for other similarly situated employees, Plaintiff was never promoted and never received the requested training because she was Puerto Rican. (Blanco depo. p. 65). Instead, other less qualified individuals were promoted and given training opportunities, all of whom were not of Puerto Rican descent. (Blanco depo. p. 63-65).

6. In fact, when Plaintiff first applied for a promotion, her supervisor, Diana Thompson, informed her that she would never be promoted because of her national origin in that she was not Anglo or African-American. (Blanco depo. p. 42).

7. Plaintiff continued to apply for promotions and each time her application was rejected. During Plaintiff's employment, she requested to be promoted at least eleven (11) times, and each time her request was denied. Meanwhile, employees who were hired after Plaintiff and

who were less qualified than Plaintiff routinely received promotions and/or additional training opportunities. (Blanco depo. p. 63-65).

8. At all times material hereto. Plaintiff was qualified for each position she applied for. Additionally, during Plaintiff's tenure with Defendant, she consistently received favorable reviews from her supervisors. (Blanco depo. p. 109)

9. Although Plaintiff has made several complaints regarding the ongoing discrimination, at least seven verbal and four written(Blanco depo. p. 57) and one directly to Tallahassee(Blanco depo. p. 63). Defendant has not taken any steps to remedy the situation.

10. Instead. Blanco's supervisors took active steps to aggressively retaliate against her for exercising her rights under Title VII. Defendant retaliated against Blanco for her grievances alleging discrimination by ensuring her failure to be promoted with improper negative write-ups and unwarranted reprimands, ultimately leading to her discharge.

11. For example, Blanco's direct supervisor, Karen McDonald, testified that Ms. Blanco was treated unfairly by the Circuit Administrator for Defendant, Gary Rogatz, regarding an incident which she was reprimanded. (McDonald depo. p. 16-17).

12. Furthermore, contrary to Defendant's regulations and guidelines, Ms. McDonald testified that she would hesitate to move up the chain of command to report a discrimination grievance by Ms. Blanco to Barry Groves, the Deputy Circuit Administrator for Defendant, because "nothing would come of it." (McDonald depo. p. 26-27).

13. Moreover, Ms. McDonald explained her reasoning behind her willingness to defy Defendant's anti-discrimination policy and procedures as being based on the perceived hostility that two high level officials, Barry Groves and Gary Rogatz, had against Ms. Blanco. According to Ms. McDonald's testimony, this hostility was related to a confrontation in which Mr. Rogatz and Mr.

CASE NO: 00-6006-CIV-ZLOCH

Groves were forced to retract a reprimand given to Ms. Blanco during an incident in which she complained of discriminatory treatment from her former supervisor, Diane Knight. (McDonald depo. p. 27).

14.  Another example of Defendant's retaliatory conduct towards Ms. Blanco is evidenced by the actions of her department supervisor, Grace Fishter.

15.  On March 30, 1998, Ms. Blanco was given a favorable performance evaluation in which both Ms. McDonald and Ms. Fishter had reviewed, consented and given their authorized signature. (McDonald depo. p. 40-43).

16.  However, on that same day of March 30th, 1998, Ms. Fishter entered a memo into Ms. Blanco's personnel file stating that she disagreed with the exact positive performance evaluation that she had just signed and given to Ms. Blanco. (McDonald depo. p. 40-43).

17.  According to the testimony of Ms. Blanco's immediate supervisor, Karen McDonald, the explanation for this discrepancy was that Ms. Fishter was forced to change her position by the circuit administrators and give Ms. Blanco a negative review. (McDonald depo. p. 40-43).

18.  At the very least, these events raise an strong inference of systematic retaliation from upper-level management of Defendant against a long term Hispanic employee who had engaged in a protective activity by voicing her belief that she was being held back and discriminated based on her national origin.

19.  On or about June 23rd, 1998, Plaintiff informed Defendant that she would not return to work until an investigation of the discrimination of her was addressed and corrected. However, Defendant still refused to investigate or otherwise correct the discrimination of Plaintiff based on her national origin.

20.   On January 4, 2000, Plaintiff filed this complaint within 90 days of her receipt of the EEOC right to sue letter. (See affidavit of Carmen Blanco attached hereto.)

21.   Defendant's acts and omissions in the instant case constitute conduct on the part of the Defendant that was willful, wanton, malicious and reckless, demonstrating a knowing and/or reckless disregard for the rights of Plaintiff.

## III. DEFENDANT HAS NOT MET THE STANDARDS
## REQUIRED FOR SUMMARY JUDGMENT

In seeking summary judgment, the Defendants bear the burden of first demonstrating to the Court the factual and legal basis for its motion and them identifying those portions of the pleadings and evidentiary submissions which show an absence of *any* genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A party moving for summary judgment must show that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970). In considering the instant motion, all of the evidence and inferences that may be drawn from the underlying facts must be viewed in the light most favorable to the Plaintiff. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). See also, Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court may not weigh conflicting evidence, make credibility determinations or decide material factual issues. Harriston, 9 F. 3d at 919.

In the seminal case of Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986), the Supreme Court set forth the standard for assessing factual disputes in a motion for summary judgment. Ruling on a summary judgment motion:

> [B]y no means authorizes trial by affidavits. Credibility determinations, the weighing
> of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge. The evidence of the non-movant is to be believed, and all justifiable inferences should be drawn in his favor.

Id. at 2513. A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record, if any, "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). Defendant has not carried its burden in this regard. In the sections which follow, Plaintiff identifies numerous facts and issues in dispute, which Defendants have represented as undisputed.

In Clark v. Coates & Clark, Inc., 929 F.2d 604 (11th Cir. 1991), the court reversed the district court's grant of summary judgment to defendant because the fact finder did not address the question whether defendant, as movant, had met its initial burden to establish the absence of a material fact. Instead, the district court skipped this step and ruled for Defendant on the basis that plaintiff had not established an issue of fact as to each element of its claim. The court ruled that this was an error of law under the Celotex standard.

Once the moving party has sufficiently supported the motion, the party opposing summary judgment must present significant probative evidence demonstrating the existence of a triable issue of fact. Ferguson v. National Broadcasting Co., 584 F.2d 111, 114 (5th Cir. 1978). Plaintiff has significant probative evidence demonstrating the existence of triable issues of fact.

The trial court should grant summary judgment only if there can be a single reasonable conclusion as to the verdict. Anderson, 106 S.Ct. at 2511 (1986). The court "must consider all the evidence in the light most favorable to the non-moving party." Rollins v. Tech South, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It must resolve all reasonable doubts in favor of the non-moving party. Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir. 1987). Considering all evidence

in the light most favorable to the Plaintiff, there cannot be a single reasonable conclusion as to the verdict. Therefore, Defendants' motion for summary judgment must fail.

## IV. NATIONAL ORIGIN DISCRIMINATION

Plaintiff is able to establish a prima facie case of discrimination by showing the following: 1) that she is a member of a protected class, 2) that she was qualified for and applied for a promotion, 3) that she was considered for and denied the promotion, and 4) other equally or less qualified employees who are not members of the protected minority were promoted. Walker v. Mortham, 158 F. 3d 1177, 1192-93(11th Cir. 1998). In the case at bar, Defendant concedes elements one and three, but denies the second and fourth elements. However, Defendant's Motion for Summary Judgment only deals with one of the 11 promotions Ms. Blanco was denied. From 1994 to 1996, Ms. Blanco applied for at least 4 other promotions to positions in the capacity of a secretary, clerk, or personnel aide and a non-Hispanic applicant was selected instead of her. According to the testimony of Ms. Blanco's supervisor, Karen McDonald, a word processor need not be specially trained for a clerical supervisor position because it is essentially the same job with perhaps an additional duty such as doing time sheets. (McDonald depo. p. 36-37). Therefore, since Ms. Blanco had been doing this job for several years with positive performance evaluations, there is a presumption that she was more qualified for these clerical positions than the other non-Hispanic applicants with less experience who were selected instead. Defendant fails to rebut this presumption other than to subjectively state that the other applicants were better suited than Ms. Blanco.

Furthermore, there is strong direct evidence of intentional discrimination that has not been refuted by Defendant. For example, on one of the first days of Ms. Blanco's employment under Ms. Thompson's supervision, Ms. Thompson stated to her, "It does not matter what you do, you are not going to get ahead within the department because you are not Anglo or African-American," and

CASE NO: 00-6006-CIV-ZLOCH

"that when there was an African-American or Anglo that was a manager of that branch, that secretary had to be African-American or Anglo." (Blanco depo. p. 42).

Consequently, Defendant does not attack the substance or veracity of these facts, but instead chooses to argue that the Court should not consider this evidence of discrimination because the claims are time-barred. To the contrary, while Plaintiff may not be able to recover damages for alleged discriminatory acts that occurred more than 300 days prior to the filing of the EEOC charge, these acts are probative with regards to Defendant's discriminatory intent within the 300 day period. As Ms. Blanco alleges in both her EEOC charge and her complaint in this action, the discriminatory conduct of Defendant was of a continual nature in which a previous adverse employment action that she complained about would negatively affect each and every working day thereafter. Thus, because this issue is more suitable for the context of a motion in limine, the Court should not disregard them entirely. Moreover, contrary to what Defendant asserts in its Motion for Summary Judgment, Ms. Blanco clearly states that she was refused training because she was Puerto Rican. (Blanco depo. p. 65).

## V. RETALIATION

In the Eleventh Circuit a prima facie case of retaliation can be established if there was (1) a statutorily protected activity, (2) an adverse employment action, and (3) a causal link between the protected actions and the adverse employment decision. Weaver v. Casa Gallardo, Inc., 922 F.2d 1515 (11th Cir. 1991); Bigge v. Albertson's Inc., 894 F.2d 1497, 1501 (11th Cir. 1990); Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-601 (11th Cir. 1986); Simmons v. Camden County Board of Education, 757 F.2d 1187 (11th Cir. 1985); and Doyal v. Marsh, 777 F.2d 1526 (11th Cir. 1985). as Although it is uncontroverted that Ms. Blanco had engaged in a statutorily protected activity by filing numerous grievances of discrimination against Defendant, Defendant asserts, in its Motion for Summary

CASE NO: 00-6006-CIV-ZLOCH

Judgment, that Plaintiff cannot satisfy either the second or third elements.

### A. Plaintiff suffered adverse employment actions

Plaintiff can clearly establish the second element of her retaliation claims - that she suffered adverse employment actions. Eleventh Circuit precedent establishes that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions such as discharge. See Wideman v. Wal-Mart Stores, Inc, 141 F.3d 1453, 1455 (11th Cir. 1998) (holding that a one day suspension and two written reprimands constituted adverse employment action within the meaning of Title VII.); See, also, Wyatt v. City of Boston, 35 F.3d 13, 15-16 (1st Cir. 1994) (stating that actions other than discharge are covered by Title VII's anti-retaliation provision and listing as examples "....refusals to promote, unwarranted negative job evaluations and toleration of harassment by other employees.").

In the instant case, Ms. Blanco was denied 11 promotions throughout her six-year tenure with Defendant. (Blanco depo. p. 63-65). Furthermore, Ms Blanco was given unwarranted negative evaluations and write-ups on several occasions. In one particular incident, two of Defendant's Circuit Administrators, Mr. Rogatz and Mr. Groves, were forced by the regional head, Mr. Singleton, to retract a reprimand given to Ms. Blanco. (McDonald depo. p. 27). This incident was the fuel that ignited the fire of retaliation. Years later, in March of 1998, coincidentally, Mr. Groves was the individual responsible for forcing Ms. Fishter to change her positive evaluation of Ms. Blanco to a negative write-up, perhaps making amends for his earlier embarrassment. (McDonald depo. p. 40).

Yet another example of an adverse employment action taken against Ms. Blanco was when she was treated unfairly by the Circuit Administrator for Defendant, Gary Rogatz, regarding an incident which she was reprimanded. (McDonald depo. p. 16-17). Thus, according to her direct supervisor, Ms. McDonald, Mr. Rogatz, the other individual who was earlier forced to retract a reprimand given to Ms.

Blanco, was now witnessed to have been treating Ms. Blanco unfairly and reprimanding her.

Also, one of Ms. Blanco's former supervisors, Linda Scarlett, would often degrade her. (Blanco depo. p. 49). On one occasion several of Ms. Blanco's supervisors made her clean up after a party they had as a means of degrading her despite the fact that this was not part of her job duties and the other non-hispanic employees were not made to do these janitorial tasks. (Blanco depo. p. 84) and (McDonald depo. p. 53). Clearly, these incidents, coupled with the numerous refusals to promote Ms. Blanco, constitute adverse employment action under Title VII.

### B. Plaintiff can establish a causal between the protected activity and the adverse action

The test for the third element, causal link, is whether or not the protected activity and the adverse employment practice are wholly unrelated. Simmons, 757 F.2d at 1189; and Bigge, 894 F.2d at 1501. Eleventh Circuit case law establishes that timing or knowledge by the retaliator is sufficient to establish a causal link. Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). See Troge v. J.C. Penny Co., Inc., 43 F. Supp. 2d 1343, 1347 (M.D. Fla. 1999) (stating that evidence an employer knows of an employee's protected activity, combined with a proximity in time between the protected action and the allegedly retaliatory action, is sufficient to establish a *prima facie* case of retaliation.). A plaintiff need only show retaliation was a motivating factor in an employer's decision to take adverse action in order to be eligible for injunctive relief in the public interest. 42 U.S.C.§ 2000e-2(m).

Again, Plaintiff can establish this element of her retaliation claim. Plaintiff's supervisors knew of the statutorily protected activities of Ms. Blanco, and their adverse employment actions were in retaliation. Diana Thompson clearly stated her intent to retaliate against Ms. Blanco for her complaints of discrimination. On one of the first days of her employment under Ms. Thompson's supervision, Ms. Thompson stated to her, "It does not matter what you do, you are not going to get ahead within the

CASE NO: 00-6006-CIV-ZLOCH

department because you are not Anglo or African-American," and "that when there was an African-American or Anglo that was a manager of that branch, that secretary had to be African-American or Anglo." (Blanco depo. p. 42). Thereafter, throughout her next six years of employment with Defendant, Ms. Blanco applied for and was denied 11 promotions. She had made numerous complaints of discrimination and filed many grievances in accordance with Defendant's anti-discrimination policy and procedures, all to no avail.

Perhaps the most striking evidence of the nexus of retaliation and Defendant's failure to properly address Ms. Blanco's complaints of discrimination can be seen in the testimony of Karen McDonald, Ms. Blanco direct supervisor just prior to her constructive discharge. Ms. McDonald testified that she would hesitate to move up the chain of command to report a discrimination grievance by Ms. Blanco to Barry Groves, the Deputy Circuit Administrator for Defendant, because "nothing would come of it." (McDonald depo. p. 26-27). Moreover, Ms. McDonald explained her reasoning behind her willingness to defy Defendant's anti-discrimination policy and procedures as being based on the perceived hostility that two high level officials, Barry Groves and Gary Rogatz, had against Ms. Blanco. According to Ms. McDonald's testimony, this hostility was related to a confrontation in which Mr. Rogatz and Mr. Groves were forced to retract a reprimand given to Ms. Blanco during an incident in which she complained of discriminatory treatment from her former supervisor, Diane Knight. (McDonald depo. p. 27). Thus, not only was there this apparent retaliatory motive against Ms. Blanco that existed in Defendant's upper-level management, but even her immediate supervisor was so much aware of it that she would not report Ms. Blanco's complaints of discrimination. Consequently, without any further recourse, Ms. Blanco was constructively discharged and compelled to resign her employment with Defendant. Although Defendant argues that the issue of constructive discharge is beyond the scope of Plaintiff's EEOC charge and should not be considered under the "like or related" rule enunciated in Evans v. U.S.

CASE NO: 00-6006-CIV-ZLOCH

Pipe & Foundry Co., 696 F. 2d 925, 928-29(11th Cir. 1983), clearly the circumstances surrounding Ms. Blanco's departure from Defendant's employ are similar in nature to her specific claims of discrimination set forth in the charge. As a result, Ms. Blanco should not be precluded from arguing that she had resigned as a direct result of the alleged discrimination and harassment just because her EEOC charge did not include the term "constructive discharge." In fact, Ms. Blanco's letter of resignation makes specific reference to the fact that she can longer tolerate working for Defendant under the existing discriminatory conditions.

### C. Defendant cannot rebut the presumption of retaliation

After the *prima facie* case is proven by plaintiff, the defendant bears the burden of rebutting the presumption of retaliation by producing legitimate reasons for the adverse employment action. Hairston v. Gainesville Sun. Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993). Defendant, in their Motion for Summary Judgment, claim that Ms. Blanco was not qualified for the promotions she had applied for. First, while these qualifications are really a question for a fact finder to determine and not one to be considered on a summary judgment standard, even if these other non-Hispanic applicants who were chosen instead of Ms. Blanco were more qualified, Ms. Blanco was still discriminated against because Defendant refused her the necessary training to advance. Nevertheless, Ms. Blanco did have the necessary experience and skills for these positions and Defendant's cannot rebut this by merely attaching self-serving responses to interrogatories stating otherwise.

The Supreme Court stated in St. Mary's Honor Center, et al. v. Hicks, 113 S.Ct. 2742, 2749 (1993), that the "fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." The Court stated that rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination; no

additional proof of discrimination is required. Id. Regarding the interpretation of the language found in St. Mary's Honor Center, et al. v. Hicks, 113 S.Ct. 2742, 2749 (1993), the court in Howard v. BP Oil Co., Inc., 32 F.3d 520, 525 (11th Cir. 1994), reiterated that "[e]vidence already introduced to establish the prima facie case may be considered, and 'indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation and establish pretext."

Plaintiff can establish pretext in this case. Plaintiff can show that in retaliation for her numerous complaints of discrimination, Defendant has engaged in an active and systematic campaign to keep Ms. Blanco from being promoted by improperly tarnishing her personnel file with unwarranted reprimands. These comparisons, together with the evidence of admissions made by Defendant's supervisors such as Karen McDonald will clearly demonstrate that Defendant's stated reasons are a pretext for unlawful retaliation. While it is rather unlikely that Ms. McDonald, a current employee in good standing with Defendant, would admit outright to the discrimination and retaliation claimed by Ms. Blanco against her payor and provider, the DOC, her candor in not denying its existence, coupled with her statements inferring such, speaks greatly to the fact that this case is not one to be disposed of on summary judgment.

## VI. CONCLUSION

Defendant's motion fails to establish a lack of material issues of fact in dispute. Moreover, Defendant misconstrues factual issues which are in dispute as grounds for dismissal as a matter of law, instead of a credibility consideration for the fact finder at trial. Plaintiff has provided an overwhelming degree of anecdotal evidence to support this action. It is not proper at this stage to judge the credibility and breadth of the witnesses' recollection. Because Defendant has not met its burden, its summary judgment motion should be denied.

CASE NO: 00-6006-CIV-ZLOCH

Respectfully submitted,

HENSCHEL & HENSCHEL, P.A.
951 Northeast 167th Street #205
North Miami Beach, FL 33162
Phone:      (305) 999-9398
Facsimile:  (305) 999-0181

By: _____

Andrew S. Henschel, Esquire
Florida Bar No. 852503

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered, by mail, this ⁴/ day of September, 2001 to Elizabeth Rodriguez, Esq. 25 West Flagler Street, PH, Miami, Florida 33130 the Clerk of the Court.

HENSCHEL & HENSCHEL, P.A.
951 Northeast 167th Street #205
North Miami Beach, FL 33162
Phone:      (305) 999-9398
Facsimile:  (305) 999-0181

By: _____

Andrew S. Henschel, Esquire
Florida Bar No. 852503

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CARMEN BLANCO,

CASE NO: 00-6006-CIV-ZLOCH

Plaintiff,

vs.

MICHAEL W. MOORE, Secretary of the
FLORIDA DEPARTMENT OF CORRECTIONS.
in his Official Capacity, and
FLORIDA DEPARTMENT OF CORRECTIONS

Defendants.
_____/

## AFFIDAVIT OF CARMEN BLANCO

STATE OF FLORIDA    )
                    ) SS:
COUNTY OF MIAMI-DADE )

BEFORE ME, the undersigned authority, authorized to administer oaths personally appeared, CARMEN BLANCO, the Plaintiff in this case, who after being duly sworn deposes and says:

1. I am the Plaintiff in this action and I have personal knowledge of the events described herein.

2. I have read Plaintiff's Response to Defendant's Motion for Summary Judgment and can attest to the truth of all the factual matters contained therein.

3. On September 22, 1998, the EEOC issued a Notice of Charge of Discrimination and corresponding Form 5 depicting the nature of the charge.

4. Upon information and belief, on October 5, 1999, the EEOC issued a notice of right to sue letter finding that it was unable to conclude that a violation had occurred and advising of the 90 day time limit in which suit was required to be filed.

CASE NO: 00-6006-CIV-ZLOCH

5.  The first time I received notice from the EEOC of my right to bring suit in this matter was when I received this document in the mail sometime after October 5, 1999.

FURTHER AFFIANT SAYETH NAUGHT.

*Carmen D. Blanco*
CARMEN BLANCO

The foregoing instrument was acknowledged before me this 4 day of September, 2000, by CARMEN BLANCO, who is personally known to me or showed _____ as ID, and who after being first duly sworn deposes and says that the allegations herein contained are true and correct to the best of her knowledge, information and belief.

Notary Public-State of Florida at Large
Print Notary's Name:

My Commission Expires:



DREW BEINHAKER
MY COMMISSION # CC 899342
EXPIRES: January 3, 2004
Bonded Thru Notary Public Underwriters